OAKLAND NEUROSURGICAL ARTS, PC v BLUE CROSS & BLUE
SHIELD OF MICHIGAN

Docket No. 72711. Submitted April 4, 1984, at Detroit.—Decided June
28, 1984. Leave to appeal applied for.

Elizabeth Allen underwent a lumbar myelogram and lumbar
laminectomy performed by Dr. Francis Martin, M.D., an em-
ployee of Oakland Neurosurgical Arts, P.C. The charges for the
services totalled $1,475. Prior to treatment, Allen signed an
agreement that she would pay the costs of the treatment
involved and then seek reimbursement from her health services
provider, Blue Cross and Blue Shield of Michigan. After receiv-
ing the treatment, Allen signed a Michigan Medical Claims
Form provided by Oakland Neurosurgical Arts, P.C., in order to
receive payment from Blue Cross and Blue Shield of Michigan.
The form was filled out in such a manner that Blue Cross was
instructed to pay Dr. Martin and Oakland Neurosurgical Arts
directly, and, by signing the form as filled out, Allen agreed to
pay any amount not covered by Blue Cross's payment. Dr.
Martin then signed the claim form, but only after drawing a
line through two sentences of the form which provided that if
the Blue Cross member did not sign the form, no prior agree-
ment as to the doctor's fee existed and that the doctor agreed
to accept the fee provided by Blue Cross as full payment for the
services rendered. The claim form was submitted to Blue Cross,
which determined that $950 was a reasonable amount to pay
for the services rendered to Allen and paid that amount to
Oakland Neurosurgical Arts and Dr. Martin. Oakland and
Martin then billed Allen for the balance of $525. Allen con-
tacted Blue Cross concerning her obligation to pay the balance
and was instructed that she was under no obligation to pay the
balance and that any further billing by Oakland and Martin
should be directed to Blue Cross. Oakland and Martin then
turned over Allen's account to a collection agency. Blue Cross
wrote a letter to Oakland and Martin and the collection agency

REFERENCES FOR POINTS IN HEADNOTES
[1, 2] 44 Am Jur 2d, Insurance § 1495.
Coverage and exclusions under hospital or medical service (Blue
Cross-Blue Shield) contracts. 81 ALR2d 927.

threatening suit for breach of contract and malicious prosecution if proceedings were instituted against Allen. Oakland Neurosurgical Arts, P.C., and Dr. Martin filed suit against Blue Cross and Blue Shield of Michigan in district court claiming tortious interference with an existing contract. Blue Cross filed a counterclaim, seeking equitable relief. The case was removed to Oakland Circuit Court, which granted plaintiffs' motion for summary judgment on the ground that except as to the amount of damages there was no genuine issue of material fact and that plaintiffs were entitled to judgment as a matter of law, George H. LaPlata, J. Defendant appeals. *Held:*

By signing the claim form as he did, Dr. Martin agreed to accept the Blue Cross payment as payment in full for his services to Allen. The payment by Blue Cross extinguished any debt owed by Allen, thus there was no contract between Allen and Dr. Martin with which Blue Cross could interfere.

Reversed.

N. J. KAUFMAN, J., dissented. He would hold that, by crossing out the two sentences on the claim form, Dr. Martin did not agree to accept the Blue Cross payment as payment in full, that Allen agreed to pay whatever amount of her bill Blue Cross would not cover, and that by signing the claim form requesting direct payment, Dr. Martin in no way changed the original agreement between himself and Allen. He would affirm.

### OPINION OF THE COURT

1. PHYSICIANS AND SURGEONS — BLUE CROSS-BLUE SHIELD.

   A physician who filed a claim form with Blue Cross and Blue Shield of Michigan requesting that benefits be paid directly to him is to be considered a participating physician and, as such, agreed to accept payment by Blue Cross as payment in full for services rendered; having thus agreed, the physician could not then bill the patient for any excess fee not covered by Blue Cross, irrespective of any prior agreement between doctor and patient.

### DISSENT BY N. J. KAUFMAN, J.

2. PHYSICIANS AND SURGEONS — BLUE CROSS-BLUE SHIELD.

   *The fact that a non-participating physician signed a claim form seeking direct payment from Blue Cross and Blue Shield of Michigan for services rendered one of its subscribers did not serve to transform him into a participating physician who agrees to accept payment by Blue Cross as payment in full for*

*his services, particularly where the physician crossed out that portion of the claim form which stated that payment received would be payment in full.*

*Sommers, Schwartz, Silver & Schwartz, P.C.* (by *Donald J. Gasiorek),* for plaintiff.

*Ralph D. Gilpin,* for defendant.

Before: J. H. Gillis, P.J., and T. M. Burns and N. J. Kaufman,* JJ.

Per Curiam. Defendant Blue Cross and Blue Shield of Michigan appeals as of right from the trial court's grant of summary judgment in plaintiffs' favor.

Plaintiff Dr. Francis Martin, M.D., is employed by plaintiff Oakland Neurosurgical Arts, P.C. On May 11, 1981, Elizabeth K. Allen saw Dr. Martin regarding certain treatment. Prior to commencement of any medical care, Ms. Allen signed a "Memorandum of Understanding", certifying that she had read and understood the following statements:

"You are hereby advised that the decision to receive care, whether as an office patient or hospital patient, must be made by you freely and must be based upon the medical advice rendered by your physician. Therefore, if your insurance carrier refuses to reimburse you because, in it's opinion, there is 'a lack of medical necessity' the responsibility for payment still rests with you.

"It is your obligation to ask the cost of medical care, and it is our duty to discuss with you the fee for the various services to be rendered, if you ask.

"As I choose not to participate in any insurance program including Blue Shield, Medicare, Medicaid and

* Former Court of Appeals Judge, sitting on the Court of Appeals by assignment.

other various prepaid programs, it is the office policy to bill the patient directly for services rendered. We will complete insurance forms to assist you in collecting your insurance benefits.

"The doctor in this office is here for one purpose— that is to render medical care. I do not wish to be involved in any lawsuits. Therefore, I will not correspond with any attorneys except when special arrangements have been made prior to your visit.

"From time to time I am asked to render a Certificate of Disability. Such will be done. But the disability determination will be based on medical factors only. The advice of an employer or union personnel, availability of a suitable job and other nonmedical factors will not be entered into consideration."

Ms. Allen then underwent a lumbar myelogram on May 12, 1981, and a lumbar laminectomy on May 13, 1981. The charges for these services were $275 and $1,200 respectively, for a total of $1,475.

On June 3, 1981, Ms. Allen signed a Michigan Medical Claim Form. Her signature was below a boxed area entitled "Subscriber's Certification" and containing the following instruction and information.

*"Blue Cross and Blue Shield Member Please Read Carefully*

"Please refer to the 'pay provider' area indicated on the top of this claim form.

"If the '*Yes*' block is checked, payment will be sent to the *doctor/provider.* Your signature is not necessary.

"If the '*No*' block is checked, payment will be sent to the *subscriber.*

"Your signature is not required to receive Blue Cross and Blue Shield of Michigan benefits. The contractual provisions concerning payment of benefits explain your rights and obligations. This is reproduced on the reverse side of this form. Your signature is required only if you agree to the certification statement below which

may obligate you to make an additional payment for services.

"'I understand the provider's charge may exceed the Blue Cross and Blue Shield of Michigan payment, and if greater than such payment, I will be responsible for that amount.'"

In Ms. Allen's case, the "yes" block was checked, indicating that payment was to be made directly to Dr. Martin. Directly above Ms. Allen's signature was the direction "read back before signing". On the back of the form was an explanation of benefits, including the following:

"3. Blue Cross and Blue Shield of Michigan will make the benefit payment directly to the physician/provider for services performed by a participating physician/provider for services performed within the State of Michigan. For a nonparticipating physician or for services outside the State of Michigan, Blue Cross and Blue Shield will make the benefit payment directly to the physician/provider or subscriber as requested on the report of services."

On June 24, 1981, Dr. Martin signed the claim form. His signature also followed a direction to "read back before signing". On the back of the form, below the heading "Physician's/Provider's Certification", was the following:

"A. If Payment to Subscriber:
"'I certify the services herein were performed personally by me or under my direct and personal supervision and in my presence, and are submitted in accordance with the provisions of the subscriber's contract. I understand *if the Blue Cross and Blue Shield member has not signed this form and thereby agreed to the above statement,* no prior agreement exists regarding my fee.'
"B. If Payment to Physician/Provider:
"'I certify the services herein were performed person-

ally by me or under my direct and personal supervision and in my presence, and are submitted in accordance with the provisions of the subscriber's contract. I agree to accept the fee provided by Blue Cross and Blue Shield of Michigan as full payment for these services.' "

Dr. Martin had run a line through the last sentence in each of A and B.

Plaintiffs submitted the claim form to defendant, which determined that the sum of $950 was a reasonable charge for the services rendered to Ms. Allen and issued a check to plaintiffs in that amount. Plaintiffs then billed Ms. Allen for the balance of $525. Ms. Allen contacted defendant's office concerning her obligation to pay the balance. On March 26, 1982, defendant drafted a letter to Ms. Allen, stating in part:

"The doctor billed us for direct reimbursement and we paid the maximum fee, $950. By choosing this billing method, the doctor has agreed to accept our determination as payment in full. Therefore, we will communicate directly with your doctor to resolve the issue of a balance billing.

"You have no further liability for the above mentioned service. If the doctor continues to bill, please return this letter along with a copy of the billing to our attention."

Ms. Allen did not pay the balance claimed by Dr. Martin, so plaintiffs turned over the account to a collection agency, World Credit, Inc. On September 8, 1982, counsel for defendant drafted a letter to Dr. Martin, with copies to World Credit, Inc., and Ms. Allen, stating that, notwithstanding the stricken terms on the back of the claim form, Dr. Martin had agreed "to accept the BCBSM payment as his full fee and [was] thereby precluded from attempting to collect anything further from the

patient". The letter threatened suit for breach of contract and malicious prosecution if plaintiffs instituted proceedings against Ms. Allen. The letter went on to state that Ms. Allen had been instructed to ignore the World Credit, Inc., notices and continued dunning would be regarded as violations of § 915 of the collection practices act, MCL 339.915(f); MSA 18.425(915)(f).

On September 28, 1982, plaintiffs commenced an action in district court for tortious interference with an existing contract. In its answer, defendant asserted that no agreement to pay a balance due existed at law. Defendant also filed a counterclaim in two counts. Count I alleged breach of Dr. Martin's participation-by-the-case agreement and requested nominal damages. Count II requested that plaintiffs be enjoined from pursuing patients for non-approved monies, that plaintiffs be required to make refunds to patients collected against, that participation-by-the-case be declared the equivalent to full participation as to that case and that alteration of the notice statements on the claim form be declared a nullity. Since Dr. Martin and other physicians associated with Oakland Neurosurgical Arts, P.C., had altered claim forms for other patients in addition to Ms. Allen, the parties agreed that Ms. Allen should serve as a representative patient/subscriber for other subscribers who were also patients of plaintiffs. Because of the equitable relief sought, defendant's request for removal to circuit court was granted pursuant to DCR 203.5(1). The circuit court denied defendant's motion for a preliminary injunction. The parties thereafter brought motions for summary judgment, plaintiffs' motion under GCR 1963, 117.2(3) and defendant's cross-motion under GCR 1963, 117.2(1), (3). Summary judgment was granted in

plaintiffs' favor. It is from this grant of summary judgment that defendant takes this appeal.

On appeal, defendant argues that Dr. Martin's submission of the claim form to BCBSM, with benefits requested to be payable to the provider, created in Dr. Martin the legal status of participating physician and that Dr. Martin's effort to abrogate this status by striking portions of the claim form was to no avail. Defendant contends that Dr. Martin, as a participating physician, did not have the legal ability to bill and collect from Ms. Allen an amount in addition to that paid by BCBSM. Rather, defendant contends, Dr. Martin's agreement with BCBSM rendered void his earlier agreement with Ms. Allen.

Plaintiffs contend that since Ms. Allen specifically acknowledged and agreed to be responsible for any balance due in excess of the amount reimbursed by defendant, Ms. Allen was liable for the balance due and that defendant, without justification, instructed Ms. Allen to refuse to pay that balance, thereby interfering with the already existing contract between plaintiffs and Ms. Allen.

After reviewing the facts as stipulated, the claim form, and the applicable laws, we conclude that the writings contained on the reverse side of the claim form constituted an explanation of the procedures and consequences of submitting the form to BCBSM and requesting payment in one of two ways, "pay provider" or "pay subscriber", and were not proposed terms to be accepted or rejected by Dr. Martin. We note that this reimbursement scheme was expressly approved by the Michigan Insurance Commissioner in a consent judgment in *Colburn v Michigan Medical Service* (Wayne County Circuit Court, Docket No. 5945, 1963). See also OAG, 1975-76, No 4859, pp 480-482 (June 2,

1976). We hold, therefore, that by checking off the "pay provider" box on the front of the form and signing on the front of the form, Dr. Martin agreed to accept the BCBSM payment as payment in full for his services to Ms. Allen. BCBSM's payment to Dr. Martin, therefore, extinguished any debt owed by Ms. Allen to Dr. Martin and, thus, there was no contract between Ms. Allen and Dr. Martin with which BCBSM could have interfered.

Reversed.


N. J. KAUFMAN, J. *(dissenting)*. I respectfully dissent.

It is stipulated that Ms. Allen saw Dr. Martin and a contract with him was entered into.

It is further stipulated that Ms. Allen signed defendant's claim form. She did not have to sign it. When she did, she agreed to pay to plaintiff whatever defendant did not pay on her bill. Dr. Martin asked that he receive the payment directly. This in no way changed the original agreement between Ms. Allen and Dr. Martin.

Defendant claims Dr. Martin became a participating physician by receiving the payment directly, but Dr. Martin never made any agreement at all with defendant. Instead, he crossed out the line on the form which stated that the payment he received would be payment in full.

I would affirm the decision of the trial court.