BLUE CROSS AND BLUE SHIELD OF MICHIGAN v PAUL

Docket No. 103609. Submitted July 6, 1988, at Lansing. Decided August 31, 1988.

From March 1, 1982, to June 30, 1984, Francis Paul, M.D., submitted 102 claims to Blue Cross and Blue Shield of Michigan for computerized axial tomography (CAT) scan services. BCBSM paid a total of $23,031.40 for CAT scans performed by Paul for BCBSM subscribers. BCBSM then discovered that Dr. Paul did not have a certificate of need for the CAT scanners. CAT scans are not covered by BCBSM if the facility or physician performing the service does not have a certificate of need from the Michigan Department of Health. Dr. Paul was requested to repay the amount paid to him for the services performed from March 1, 1982, to June 30, 1984. BCBSM made automatic deductions totalling $6,757.85 and requested that Paul repay $16,273.55, plus interest. Dr. Paul refused to make payment. BCBSM filed suit against Dr. Paul in Muskegon Circuit Court alleging misrepresentation, breach of contract, and unjust enrichment. The court, James M. Graves, Jr., J., granted summary disposition in favor of plaintiff on the breach of contract claim, finding that defendant's execution of the claim form created a contract that defendant would receive payment only for CAT scans performed during the time that defendant had a certificate of need and that, because defendant never had a certificate of need, he breached the terms of the contract by applying for and accepting payment for the services rendered. Defendant appealed.

The Court of Appeals *held:*

1. Defendant was legally bound by the terms and conditions found on the reverse side of the benefits claim form. Those terms and conditions required defendant to have a certificate of need in order to receive benefits from BCBSM. Because defendant did not have a certificate of need, he did not comply with

REFERENCES

Am Jur 2d, Insurance §§ 269, 270; Physicians, Surgeons, and Other Healers §§ 378 *et seq.*

Coverage and exclusions under hospital or medical service (Blue Cross-Blue Shield) contracts. 81 ALR2d 927.

the terms and conditions stated on the claim form and was not entitled to BCBSM benefits. The court did not err in finding that a contract had been entered into, that defendant had breached that contract, that BCBSM had no duty to make payment to defendant, and that BCBSM therefore was entitled to judgment as a matter of law.

2. The certification statement on the reverse side of the BCBSM benefits claim form is a contractual term binding upon defendant.

3. Defendant's argument that the proper measure of damages here is the difference between the value of services actually provided and the value of the services if provided by a facility with a certificate of need is rejected. BCBSM is not obligated to pay for services not covered by its contract. While defendant has a right to be paid for his services, he must look to his individual patients, and not BCBSM, for payment.

Affirmed.

1. PHYSICIANS AND SURGEONS — INSURANCE — BLUE CROSS-BLUE SHIELD — CLAIM FORMS.

The writings on the reverse side of a Blue Cross and Blue Shield of Michigan claim form are binding and are not proposed terms to be accepted or rejected by a doctor; by signing the form, a doctor enters into a contract with BCBSM and is legally bound by the terms and conditions stated on the form and must comply with those terms and conditions to be entitled to payment by BCBSM for services rendered to BCBSM subscribers.

2. PHYSICIANS AND SURGEONS — INSURANCE — BLUE CROSS-BLUE SHIELD — PAYMENT FOR SERVICES — MISREPRESENTATION — REIMBURSEMENT.

A doctor who does not comply with the terms and conditions set forth on a Blue Cross and Blue Shield of Michigan claim form is not entitled to payment by BCBSM for services rendered to BCBSM subscribers; under such circumstances, the doctor must look to his individual patients for payment for services rendered; if a doctor is erroneously paid by BCBSM for such services due to misrepresentation on his part, he must repay to BCBSM the full amount received, plus interest.

*Teresa Mikan* and *Steven C. Hess,* for plaintiff.

*Fitzgerald, Hodgman, Cox, Cawthorne & McMahon* (by *William H. Horton*), for defendant.

Before: Beasley, P.J., and Sawyer and T. J. Foley,* JJ.

Per Curiam. Defendant, Francis Paul, M.D., appeals as of right from an order granting summary disposition pursuant to MCR 2.116 (C)(10) in favor of plaintiff, Blue Cross and Blue Shield of Michigan, on its breach of contract claim. The trial court held that since defendant did not have the requisite certificate of need (con), as required in the subscriber contract, the contract with bcbsm was breached. Plaintiff was awarded a judgment of $16,273.55, that being the balance of overpayment to defendant from bcbsm between March 1, 1982, and June 30, 1984. Defendant appeals, raising three issues.

First, defendant claims that the writings on the bcbsm claim form did not constitute a contract. On appeal, the parties stipulated the facts. In *Oakland Neurosurgical Arts, PC v Blue Cross & Blue Shield of Michigan,*[1] we held that the writings on the reverse side of the bcbsm claim form are binding and "were not proposed terms to be accepted or rejected by [a doctor]." Defendant maintains that *Oakland Neurosurgical* stands for the proposition that no contract is created by the bcbsm claim form. However, we agree with the trial court that *Oakland Neurosurgical* held that the doctor was bound by the terms of the claim form, although the case does not go so far as to call the claim form a contract.

*Oakland Neurosurgical* dealt with the same type of claim form involved in this case and held that a nonparticipating physician who checks the pay provider box on the claim form and signs the form

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] 135 Mich App 798, 805; 356 NW2d 267 (1984), lv den 422 Mich 920 (1985).

creates in the doctor the legal status of a participating physician. Moreover, the *Oakland Neurosurgical* Court noted that "writings contained on the reverse side of the claim form constituted an explanation of the procedures and consequences of submitting the form to BCBSM . . . and were not proposed terms to be accepted or rejected by [a doctor]."[2]

Based upon that case, we believe defendant was legally bound by the terms and conditions found on the reverse side of the benefits claim form. The reverse side of the benefits claim form under Physician's/Provider's Certification, § B, states the services were submitted in accordance with the provisions of the subscriber's contract.

In *Culver v Castro*,[3] we said:

It has been held that where one writing refers to another the two writings are to be construed together. . . . Similarly, where there are several agreements relating to the same subject matter the intention of the parties must be gleaned from all the agreements. [Citations omitted.]

The reverse side of the BCBSM claim form refers to the subscriber's contract which requires that CAT scans be performed in a facility approved by the appropriate health planning agency. The BCBSM claim form incorporates the subscriber's contract and requires defendant to have a CON in order to receive benefits from BCBSM. As defendant did not have a CON, he therefore did not comply with the terms and conditions stated on the back of the BCBSM benefit claim form and was not entitled to BCBSM benefits.

The trial court did not err in finding that a

---

[2] *Id.* at 805.

[3] 126 Mich App 824, 826; 338 NW2d 232 (1983).

contract had been entered into in the present matter, that defendant had "breached" that contract with BCBSM, that BCBSM had no duty to make payment to defendant, as defendant had not complied with the terms and conditions on the back of the BCBSM claim form, and, therefore, that plaintiff was entitled to judgment as a matter of law.

In further support of this conclusion, we note that the statute permits a health care corporation to enter into participating contracts which cover all members or an individual contract on a per claim basis, as follows:

> (1) A health care corporation may enter into participating contracts for reimbursement with professional health care providers practicing legally in this state for health care services which the professional health care providers may legally perform. A participating contract may cover all members or may be a separate and individual contract on a per claim basis, as set forth in the provider class plan . . . .[4]

In light of the foregoing, we uphold the trial court's finding that there was a "contract" between BCBSM and defendant and that the terms of that contract are those delineated on the back of the claim form which incorporates the subscriber's contract.

Second, defendant claims that the "certification statement" on the BCBSM claim form was not a contractual term binding on defendant. Defendant argues that a statement of existing fact is not contractual and may not form the basis of an action in contract, citing *Hi-Way Motor Co v International Harvester Co*[5] and *Kirk v Vaccaro*[6] in

---

[4] MCL 550.1502(1); MSA 24.660(502)(1).

[5] 398 Mich 330, 336; 247 NW2d 813 (1976).

[6] 344 Mich 226, 231-232; 73 NW2d 871 (1955).

support. We do not find that these cases support the proposition asserted by defendant. Defendant quotes the following language from *Hi-Way Motor* in support of his argument:

> In *Boston Piano & Music Co v Pontiac Clothing Co,* 199 Mich 141; 165 NW 856 (1917), we affirmed the rule that an action for fraudulent misrepresentation must be predicated upon a statement relating to a past or an existing fact. Future promises are contractual and do not constitute fraud.[7]

The above quoted language does not indicate, as defendant suggests, that statements of existing fact are not contractual and that only future promises are contractual.

Defendant also quotes from the *Kirk* case:

> We need cite no authority to establish the rule that fraud cannot be presumed, but must be established by a preponderance of the evidence. It is also a general rule that statements promissory in their character that one will do a particular thing in the future are not misrepresentations, but are contractual in their nature, and do not constitute fraud, see *Boston Piano & Music Co v Pontiac Clothing Co,* 199 Mich 141, 147, 148. In the above case we cited with approval from 12 RCL, Fraud and Deceit, § 21, pp 254, 255, the following:
> " 'Since a fraud must relate to facts then existing or which have previously existed, the general rule is that fraud cannot be predicated upon statements promissory in their nature and relating to future actions, nor upon the mere failure to perform a promise, or an agreement to do something at a future time, or to make good subsequent conditions which have been assured.' "[8]

This case, like *Hi-Way Motor Co,* does not hold

---

[7] *Hi-Way Motor, supra* at 336.

[8] *Kirk, supra* at 231-232.

that statements of existing facts are not contractual and does not support defendant's argument.

Similarly, *Van Tassel v McDonald Corp* [9] and *Acme Cut Stone Co v New Center Development Corp,* [10] also cited by defendant as supportive authority, do not hold that existing facts do not form the basis for an action in contract.

As previously indicated, this Court in *Oakland Neurosurgical, supra,* has held that writings and terms on the back of a claim form, similar to those here involved, are binding and not negotiable between BCBSM and the doctor. Therefore, we affirm the trial court's finding that the certification statement on the reverse side of the BCBSM benefits claim form is a contractual term binding upon defendant.

Third, defendant claims that the proper measure of damages here is the difference between the value of the services actually provided and those required to be provided. Defendant argues that he performed CAT scan services for an amount less than that charged at those facilities in the Muskegon area which have CON approval. Defendant maintains that had he not performed the CAT scans in his office, his patients would have had them done at a local Muskegon hospital with CON approval for a higher price than defendant charged. Under his argument, defendant then concludes that plaintiff BCBSM would have had to pay more had defendant's patients gone to a CON approved facility for their CAT scans. Defendant then claims the measure of damages should be the difference between the value of the services actually provided and those required to be provided by BCBSM.

[9] 159 Mich App 745; 407 NW2d 6 (1987).
[10] 281 Mich 32; 274 NW 700 (1937).

Here, BCBSM says it has no obligation to pay for services that are not covered by its contract, that defendant's arguments represent mere speculation, and that BCBSM is not required to pay these claims under its contract. The purpose of the requirement that the equipment be approved by the appropriate agency is to prevent increased health care costs, including those of insurance, when providers pass on the expense of equipment which is not needed in the community.

In affirming the trial court's order, we are not denying defendant's right to payment for the services rendered. Rather, we are simply declaring that BCBSM is not contractually liable to defendant for those services and that defendant must look to his individual patients for payment.

Affirmed.